IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUSTIN LEE RETTEW, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| SANDY ABBEY, et al. | : NO. 13-1973 |
| Defendants. | : |

**MEMORANDUM OPINION**

**Tucker, C. J.**                                                                                              **July __, 2013**

Presently before the Court are Defendants Sandra Yecker, Ph.D and Sandra Abbey, CRNP's Motion to Dismiss Plaintiff's Complaint (Docs. 11 & 12), Plaintiff's Response in Opposition (Doc. 16), Defendant Deputy Warden Joe Shiffer's Motion to Dismiss Plaintiff's Complaint (Docs. 18 & 20), and Plaintiff's Response in Opposition (Docs. 21 & 22). Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Defendants' motions to dismiss will be ***granted***.

## I. FACTUAL BACKGROUND

This complaint arises from mental health treatment Dustin Rettew ("Plaintiff") received while incarcerated at Lancaster County Prison for an undisclosed amount of time. In February 2012, PrimeCare Medical Inc. mental health physician, Defendant Dr. Sandra Abbey ("Dr. Abbey")[1] began administering the psychotropic medication Depakote to Plaintiff to address his

---
[1] Defendants Sandra Yecker, Ph.D and Sandra Abbey, CRNP's Motion to Plaintiff's Complaint refers to Defendant Abbey as "Nurse Abbey." However, both Plaintiff's Complaint and Defendant Deputy Warden Joe Shiffer's

various mental health issues. Pl.'s Compl. p. 3, ECF No.3. Plaintiff alleges his mental health issues have been documented by various hospitals, state correctional institutions, the Lancaster County Police Department, and previous stints in the Lancaster County Prison. Id. While being prescribed Depakote, Plaintiff alleges that for reasons beyond his control he continuously missed his "med passes" and this resulted in missed dosages. Id. Plaintiff claims that on August 23, 2012 he brought these concerns to the attention of Dr. Abbey and requested she review his treatment plan in order to accommodate his inability to take the medication as directed. Id. Plaintiff alleges that at this time Dr. Abbey refused to change the treatment plan. Instead, Dr. Abbey gave him a warning that if he continued to miss the appropriate amount of dosages it would make the medication ineffective and the medication would no longer be provided to him. Id. Plaintiff was again warned on November 15, 2012. Pl.'s Compl., Ex. A, ECF No.3.[2] On December 7, 2012, Dr. Abbey stopped providing Plaintiff with Depakote. Pl.'s Compl. p. 3, ECF No. 3. Four days later, Plaintiff submitted a "sick slip"[3] requesting the medication be resumed and the treatment plan be revised to adequately address his mental health needs. Id. On December 14, 2012, Dr. Abbey restarted the medication regimen, however Plaintiff claims Dr. Abbey never met with him in order to revise the treatment plan. Id.

On January 3, 2013, Dr. Abbey again stopped providing the Plaintiff with Depakote. Pl.'s Compl., Attch. p. 1, ECF No. 3. Over the next two months, Plaintiff claims to have sent at least

---

Motion to Dismiss identify Defendant Abbey as "Dr. Abbey." For the sake of consistency, the Court will refer to Defendant Abbey as Dr. Abbey.

[2] Plaintiff's Exhibit A is a copy of the Grievance Plaintiff sent to Defendant Deputy Warden Shiffer on March 10, 2013. Dr. Yecker's response, dated March 13, 2013, is written at the bottom of the Grievance.

[3] Under PrimeCare policies and procedures, an inmate in need of medical attention submits a "sick call slip" describing his condition to prison medical staff via a drop box. Hojnowski v. Primecare Med., CIV. 06-CV-1228, 2009 WL 1175611 at *1 (E.D. Pa. Apr. 30, 2009). A prison nurse then assesses the request and arranges for the appropriate medical response. Id. at *1, 6.

ten "sick slips" to PrimeCare Medical Inc. requesting to meet with Dr. Abbey. Id. at 1-4. Subsequent to each submission, Plaintiff was seen by a PrimeCare medical professional. Id. Plaintiff further claims that each professional he saw referred him to Dr. Abbey for medical treatment. Id. Despite these alleged referrals from the other medical professionals, Dr. Abbey did not reinstate the medication nor did she meet with the Plaintiff to personally assess his treatment plan. Id.

On March 10, 2013, Plaintiff filed a grievance with the prison directed to the attention of Defendant Deputy Warden Joe Shiffer ("Deputy Warden Shiffer"). Id. at 3 [hereinafter "Grievance" or "Plaintiff's Grievance"]. In the Grievance, Plaintiff complained that he had repeatedly sent requests to meet with Dr. Abbey but they had gone unanswered. Three days later, Defendant Dr. Sandra Yecker ("Dr. Yecker") responded to the Grievance. Pl.'s Compl., Ex. A, ECF No.3. Dr. Yecker informed Plaintiff that his medication regimen would not be reinstated as a result of his noncompliance. Id. Plaintiff contends Defendants' claims of noncompliance are unfounded. Pl.'s Resp. p. 7-8, ECF No. 16. Plaintiff alleges if he was refusing to take his medication then the PrimeCare medical physicians should have followed procedure and filled out a form stating his noncompliance. Id.

As a result of the aforementioned events, Plaintiff asserts he has suffered severe depression, high anxiety, uncontrollable moments of anger, self-isolation, malnutrition , racing thoughts, sleep deprivation, sense of hopelessness, loss of will to live, mental anguish, and needless suffering. Pl.'s Compl. p. 3, ECF No.3. Plaintiff claims the Defendants' refusal to reinstate his medication is a violation of his constitutional rights. Plaintiff brings this suit, pursuant to 42 U.S.C. § 1983, claiming a violation of his Eighth Amendment and/or Fourteenth Amendment rights by Dr. Abbey, Dr. Yecker, and Deputy Warden Shiffer.

## II. STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the "'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). In Twombly, the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citations omitted).

In 2009, the Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  In <u>Iqbal</u>, the Court made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [will] not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  <u>Id.</u> at 663.  "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." <u>Id.</u> at 679.

In light of the decision in <u>Iqbal</u>, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion.  First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009).  Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." <u>Id.</u> at 211 (citation omitted).  If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief.  <u>Id.</u>

### III. <u>DISCUSSION</u>

Section 1983 does not itself create substantive rights, but affords a remedy for the violation of rights granted by the federal law.  <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995).  To establish a prima facie case under §1983, the Plaintiff must prove that a person acting under the color of law committed a deprivation of rights guaranteed by the Constitution or the laws of the United States.  <u>Id.</u>

As a preliminary matter, it should be noted that Plaintiff's Complaint does not specify whether he was being held as a pretrial detainee or convicted prisoner while incarcerated at Lancaster County Prison.  A claim under the Eighth Amendment is only proper where the government has had a "formal adjudication of guilt." <u>Sylvester v. City of Newark</u>, 120 Fed.

Appx 419, 423 (3d Cir. 2005) (internal citation omitted). This is because prior to that time the government has not acquired "the power to punish with which the Eighth Amendment is concerned." Id. Prior to a conviction, the prisoner is protected by the Due Process Clause of the Fourteenth Amendment. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Because the Complaint is unclear, the Court will analyze the instant matter under both standards.

### A. Plaintiff Has Not Sufficiently Demonstrated a Valid Constitutional Claim Arising under the Eighth Amendment.

The Eighth Amendment provides protection against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. As the United States Supreme Court has stated, the Eighth Amendment symbolizes "broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ." Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation omitted). Accordingly, the Supreme Court has held that punishment that is incompatible with modern standards of decency or which provides wanton infliction of pain is adverse to the Eighth Amendment. Id. These principles have established the "government's obligation to provide medical care for those whom it punish[es] by incarceration." Id. at 103. Because the inmate is imprisoned, he has no alternative but to depend on the prison authorities for medical care. Id. at 104. Failure to provide medical care on the part of the prison may in extreme circumstances result in death and, in lesser instances, cause unnecessary suffering. Id. It is for these reasons that a failure to provide medical care is a constitutional violation of the Eighth Amendment and considered cruel and unusual punishment. Id.

In order to properly allege a civil rights violation of the Eighth Amendment for failure to provide medical care, a plaintiff must show (1) he had a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle, 429 U.S. at 103–04. A prison official acts with deliberate indifference to a prisoner's serious medical

needs where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Further, deliberate indifference requires a showing of "wanton infliction of unnecessary pain." Estelle, 429 U.S. at 105. "[N]egligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and *an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.*" Iseley v. Beard, CIV. 1:CV-02-2006, 2009 WL 3199694 (M.D. Pa. Sept. 29, 2009) (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993)) (emphasis added). In addition, a physician's decision not to perform particular tests or diagnostic measures on a prisoner will not support a § 1983 claim because these decisions are considered medical judgments that are non-actionable. Estelle, 429 U.S. at 107; see also United States ex rel. Walker v. Fayette County, Pennsylvania, 599 F.2d 573, 575 n. 2 (3d Cir.1979) (noting that "where dispute is over adequacy of the treatment, federal courts are generally reluctant to second guess a medical judgment and to constitutionalize claims which sound in state tort law."). Accordingly, for an Eighth Amendment claim to succeed based on improper medical treatment, the prisoner must show that treatment consisted of "act[s] which were either intentionally injurious, callous, grossly negligent, shocking to the conscience, unconscionable, intolerable to the fundamental fairness or barbarous." Miller v. Hoffman, No. CIV.A. 97-7987, 1999 WL 415397, at *5 (E.D.Pa. June 22, 1999) (quoting Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir.1978)).

In the instant matter, Defendants do not deny that Plaintiff has a serious medical need or condition. Accordingly, the only dispute if whether Plaintiff has adequately alleged deliberate indifference by the Defendants. Plaintiff generally contends Dr. Abbey, Dr. Yecker, and Deputy

7

Warden Shiffer violated his constitutional rights by not reinstating his medication. Plaintiff asserts that his medication was discontinued without an adjustment of his treatment plan and without his knowledge or ability to comply. Plaintiff alleges he complained to each Defendant of his need for his medication to be reinstated to no avail. The Court finds these claims fall far short of adequately alleging deliberate indifference. Plaintiff asserts no facts alleging the Defendants knew of and disregarded an excessive risk to his health, or wantonly inflicted pain.

1. <u>Defendant Dr. Sandra Abbey</u>

Despite Plaintiff's assertions that the Defendants neglected his medical needs, Plaintiff was visited by a medical professional subsequent to every sick slip he submitted. Plaintiff seems to suggest that, simply because he did not see Dr. Abbey specifically, his medical needs were neglected. However, the Eighth Amendment does not require that an inmate be visited by the medical professional of his choosing.

In addition, although Plaintiff claims each medical professional referred him to Dr. Abbey, Plaintiff's own Exhibit A (the Grievance) rebuts this assertion. Plaintiff's Grievance demonstrates that, rather being referred to Dr. Abbey, he was actually informed by medical staff that his medication would not be reinstated because he would not take the medication as directed. As Dr. Yecker stated in her response to Plaintiff's Grievance, Depakote is only effective when administered properly, which is two times a day. Plaintiff admits to missing the morning med passes to take the medication, but nonetheless claims this is not evidence of refusal. Instead Plaintiff states this is evidence that the treatment plan provided by Dr. Abbey needed to be adapted to address his inability to take the medication as directed. The Court finds this argument lacking. Dr. Abbey was under no constitutional obligation to substitute Plaintiff's opinion for her own medical judgment. There is also no violation of the Eighth Amendment when a

physician, exercising her medical judgment, determines that an inmate's course of treatment should be discontinued because of the inmate's unwillingness to fully comply with that course of treatment.

Further, Plaintiff's medication was only discontinued after five months of noncompliance, and at least two warnings that he needed to take the medication as directed. Plaintiff provides no explanation as to why he was unable to take the medication as directed or why he ignored Dr. Abbey's advice. Furthermore, after Plaintiff's medication was initially suspended, it was later reinstated. This demonstrates that Plaintiff was given another opportunity to take the medication appropriately.

Finally, according to Plaintiff, PrimeCare has a procedure in place for inmates that refuse to be administered medication. Allegedly, PrimeCare is to file a form and have both the inmate and the medical professional sign it in order to confirm the inmate has not taken the medication. Plaintiff cites the absence of this document as evidence the medication was improperly suspended. While the Defendants may or may not have filed the appropriate paperwork, the fact remains that Plaintiff consistently and admittedly failed to take the medication as prescribed. The mere failure of the Defendants to complete the form does not rise to the level of deliberate indifference.

### 2. Defendants Dr. Yecker and Deputy Warden Shiffer

Plaintiff does little more than mention Defendants Dr. Yecker and Warden Shiffer in the Complaint. Plaintiff presents no facts that would suggest either displayed a deliberate indifference to his medical needs. The one Grievance that Plaintiff submitted to Deputy Warden Shiffer was answered timely by Dr. Yecker. It follows that Plaintiff has insufficiently pled a constitutional claim asserting that either of these defendants failed to provide him with medical

9

care as required by the Eighth Amendment.

### B. Plaintiff Has Not Sufficiently Demonstrated a Valid Constitutional Claim Arising under the Fourteenth Amendment.

Under the Due Process Clause of the Fourteenth Amendment, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.' Bell v. Wolfish, 441 U.S. 520, 535 (1979). A pretrial detainee has not been adjudged guilty of any crime. As such, the government may choose to detain the inmate in order to ensure his presence for trial, but may not "subject him to the restrictions and conditions of the detention facility" that "amount to punishment, or otherwise violate the Constitution." Id. at 536-37. Thus, while "the due process rights of a [pre-trial detainee] are *at least* as great as the Eighth Amendment protections available to a convicted prisoner," Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (emphasis in original and internal citation omitted), the proper standard for examining such claims is the standard set forth by the Supreme Court in Bell v. Wolfish — *i.e.*, whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt. See also Montgomery v. Ray, 145 F. App'x 738, 740 (3d Cir. 2005).

Plaintiff has failed to meet his burden. The Court has already found that Plaintiff failed to sufficiently allege deliberate indifference by the defendants. Accordingly, the Plaintiff does not come close to adequately alleging the Defendants acted with an express intent to punish him.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted. An appropriate order follows.